81 Mass. App. Ct. 639 (2012)                 639

Doe, Sex Offender Registry Board No. 136652 *v*. Sex Offender Registry Board.

JOHN DOE, SEX OFFENDER REGISTRY BOARD No. 136652 *vs.*
SEX OFFENDER REGISTRY BOARD.

No. 10-P-435.

Essex. February 9, 2011. - April 27, 2012.

Present: GRASSO, McHUGH, & WOLOHOJIAN, JJ.[1]

*Sex Offender. Sex Offender Registration and Community Notification Act.
Constitutional Law,* Sex offender, Assistance of counsel. *Due Process of
Law,* Sex offender, Assistance of counsel. *Evidence,* Administrative proceed-
ing, Hearsay. *Administrative Law,* Adjudicatory proceeding, Evidence.

In proceedings to classify the plaintiff as a sex offender, an ex parte proceed-
ing in which the Sex Offender Registry Board (board) obtained permission
for release of a Juvenile Court clinic report did not violate the plaintiff's
constitutional right to counsel [646-647]; however, the hearing examiner
for the board erred in relying on the report, which contained layered
hearsay that did not contain the requisite indicia of reliability [647-650].
In proceedings to classify the plaintiff as a sex offender, the hearing examiner
for the Sex Offender Registry Board acted arbitrarily and capriciously
when he used several risk factors relating to the victim's age without tak-
ing into account the plaintiff's own age at the time of the offense and
without explaining why the factors were applicable despite the plaintiff's
youthful status. [650-656]

CIVIL ACTION commenced in the Superior Court Department on
January 2, 2008.

The case was heard by *Richard E. Welch, III,* J., on motions
for judgment on the pleadings.

*Laura Chrismer Edmonds* for the plaintiff.

*Paul Tuttle* for the defendant.

McHUGH, J. The plaintiff, who was at the moment of interest
a ten year old boy, appeals from a Superior Court judgment
affirming his classification as a level two sex offender. That
publicly available classification required the youngster to register

---

[1]Justice McHugh participated in the deliberation on this case and authored
this opinion prior to his retirement.

annually with the Sex Offender Registry Board (SORB) and with the police department in the city or town where he lived. See G. L. c. 6, § 178K(2)(*b*).[2] The classification also required him to appear each year at a police station so that police could update his photograph and fingerprints. See G. L. c. 6, § 178F¹/₂.

In the Superior Court, the plaintiff challenged the classification by arguing that (1) the SORB improperly obtained and used a Juvenile Court clinic evaluation report prepared pursuant to G. L. c. 119, § 68A; (2) the SORB hearing examiner impermissibly used the report's multilayered hearsay as a basis for determining the plaintiff's level two classification; and (3) the examiner's use of certain SORB risk factors was arbitrary and capricious because they were not designed for application to prepubescent children.[3] On the present record, we see no error with the way in which the SORB obtained the evaluation report but we do agree that the examiner improperly used multilevel hearsay and that, on this record, the use of certain risk factors was arbitrary and capricious. We therefore reverse.

---

[2]General Laws c. 6, § 178K(2)(*b*), as amended through St. 2006, c. 139, § 29, provides:

> "Where the board determines that the risk of reoffense is moderate and the degree of dangerousness posed to the public is such that a public safety interest is served by public availability of registration information, it shall give a level 2 designation to the sex offender. In such case, the board shall transmit the registration data and designation to the police departments in the municipalities where the sex offender lives, has a secondary address and works and attends an institution of higher learning or, if in custody, intends to live and work and attend an institution of higher learning upon release and where the offense was committed and to the Federal Bureau of Investigation. The public shall have access to the information regarding a level 2 offender in accordance with the provisions of sections 178I and 178J. The sex offender shall be required to register and to verify registration information pursuant to section 178F1/2."

[3]The plaintiff also argues that the SORB regulations violate the due process and equal protection clauses of the Fourteenth Amendment to the United States Constitution because they do not differentiate among developmental stages within the broader category of juveniles, specifically between prepubescent and adolescent offenders. Because we resolve the case in the plaintiff's favor on nonconstitutional grounds, we do not reach his constitutional claim. See *Commonwealth* v. *Paasche*, 391 Mass. 18, 21 (1984) ("We do not decide constitutional questions unless they must necessarily be reached").

A. *Facts and procedural background.* The record shows that the incident leading to the plaintiff's registration order occurred on June 5, 2004, at the home of one of his neighbors. After playing basketball in a neighbor's backyard with two of the neighbor's male children, one of whom was seven years old, the other ten, and both of whom had special needs, the plaintiff, who also was in therapy for special needs and was a classmate of the ten year old at a special needs school, asked the seven year old if he "wanted him to suck his private." The boy "said, 'No,' then said 'Yes,' and stuck his private out." The plaintiff placed the boy's penis in his mouth. At that point, the boy's father, who was walking by a window in the nearby house, saw what was happening and banged on the window. The plaintiff fled, pursued by the younger boy's ten year old brother, who shouted at him that he should stop because their father simply wanted to talk to him, a fact the father later confirmed to police. At some point the pursuing brother tripped and fell, then the plaintiff grabbed his neck and briefly attempted to strangle him before running off to his own home.

The father reported the incident to police the next day. A SAIN interview[4] promptly followed, during the course of which the older brother gave the interviewer the details recited above. The younger brother, however, declined to say anything and left the interview room promptly after the interviewer began to raise what for him were evidently difficult issues.

In late May, 2005, almost a year later, the plaintiff and his mother were summoned to the local police station to discuss the 2004 incident. There, they were met by an officer who gave them a Miranda warning, allowed them some private time to discuss its implications, and then told them that he wanted to discuss the incident of a year earlier. The officer told the plaintiff and his mother that it would be "alright to be honest with" police and, in response to the plaintiff's statement that "I'm really scared that you're going to arrest me," "calmly assured [the boy] that he was not going to be arrested." The plaintiff then said that he had asked the young boy if he could see his penis and had put it in his mouth when the boy displayed it. When the officer asked him why he had done that, the plaintiff

[4]SAIN is an acronym for Sexual Abuse Intervention Network. See *Commonwealth* v. *Patton*, 458 Mass. 119, 121 n.1 (2010).

642                                                81 Mass. App. Ct. 639 (2012)

Doe, Sex Offender Registry Board No. 136652 *v.* Sex Offender Registry Board.

responded, "Because Junior [a fourteen year old who lived nearby] sexually assaulted me, I thought it was OK."[5]

Over the next few months, the plaintiff, who had had a troubled school history that included numerous fights with male peers, began to engage in a series of low value shopliftings and other larcenies. At one point during the period, he lay down in the middle of Route 138 after telling bystanders that he wanted to kill himself. When police arrived, however, he denied any self-destructive impulses and said that he just wanted to see what kind of reaction his behavior would provoke in the police and fire department.[6]

In August, 2005, complaints issued charging the plaintiff with juvenile delinquency by reason of rape of a child (no force) in violation of G. L. c. 265, § 23; indecent assault and battery on a child under the age of fourteen in violation of G. L. c. 265, § 13B; and the larcenies in which he had engaged over the summer. Thereafter, a judge of the Juvenile Court ordered an evaluation by the court clinic pursuant to G. L. c. 119, § 68A.[7] The resulting nineteen-page report was completed on September 22, 2005, and included information from the plaintiff, certain

---

[5]The plaintiff also wrote out and signed the following statement: "I did do it. I put his penice [*sic*] in my mouth. I did because I thought it is good because a person sexually assaulted me. His name is Junior." He told the officer and later told social workers that Junior's sexual assault took the form of anal intercourse at knife point after Junior came upon him in the laundry room of the building where they lived. The plaintiff's mother told the officer that she had reported the incident to an assistant district attorney, whose name she gave the officer, and that her son had reported the incident to his teachers. The record is silent as to what, if any, official action followed those reports.

[6]After the incident and after the fire department "cleared [the boy] of any [p]sychiatric problems," according to the police report, police released him to his mother, though she said that he did not listen to her and had caused many problems recently.

[7]General Laws c. 119, § 68A, as appearing in St. 1996, c. 200, § 12, provides:

> "A child between seven and seventeen years of age, held by the court for further examination, trial or continuance, or for indictment and trial, may at the discretion of the court be referred to the department of youth services, any court clinic, or the department of mental health, with its consent, and with the consent of the parents or guardian, for diagnostic study on an inpatient or outpatient basis; and, upon completion of such study, the department of youth services, court clinic or department of mental health, as the case may be, shall forward a report and recommendations to the court."

family members, and various social workers, case workers, and clinicians who had treated him over the years. Based on her findings that he posed an ongoing risk of delinquency, including acts "possibly of an aggressive and sexually assaultive nature," the clinician recommended that the plaintiff be placed "in an extremely structured and contained residential treatment program designed to address the treatment needs of boys who are at risk for sexual perpetration."

Care and protection proceedings, see G. L. c. 119, § 24, followed and resulted in an order placing the plaintiff in the custody of the Department of Children and Families (DCF) until he reached the age of eighteen. On November 14, 2005, DCF placed him in a facility operated by the Robert F. Kennedy Children's Action Corps, Inc. (RFK Center), designed to provide intensive care, treatment, and schooling to troubled children at high risk.

The following March, while at the RFK Center, he pleaded delinquent to the two charges arising out of the June, 2004, incident with the seven year old boy and several of the charges he had accumulated during the summer months after his conversation with police. The remaining larceny and shoplifting charges were dismissed. On all of the charges to which he pleaded delinquent, he received concurrent terms of probation until March 31, 2011.[8] When he offered his plea, the plaintiff was twelve and one-half years old.

The SORB then initiated classification proceedings pursuant to the sex offender registration law (SORL), G. L. c. 6, §§ 178C-178Q, which requires registration by certain individuals who have been convicted or found delinquent because of specified unlawful sexual activity. The statute also prescribes a two-step process for determining an offender's classification and resulting registration requirements.[9]

Here, during the first step, the SORB asked the probation

[8]It is not clear why adjudications of delinquency were entered on both a greater and a lesser offense that arose out of a single act of fellatio and nothing more. The duplication had a consequence in the later SORB proceedings. See note 23, *infra*, and related text.

[9]In the first of the two steps, the SORB assesses on its own, and after considering any submissions by the potential registrant, an offender's risk of reoffense. It then makes a recommendation on the appropriate classification

department to provide it with the report the Juvenile Court clinic had prepared with respect to the plaintiff. On a Juvenile Court form entitled, "Recommendation for Release of [Juvenile] Court Clinic Report," a probation officer filed with the court an ex parte petition for the report's release to the SORB.[10] A judge of the Juvenile Court allowed the petition and the report was delivered to the SORB. Thereafter, on July 11, 2006, the SORB notified the plaintiff that he had been classified as a level two (moderate risk) sex offender and was required to register in that category. See G. L. c. 6, § 178K(2)(*b*).

Through counsel,[11] the plaintiff then requested an evidentiary hearing to challenge the SORB's decision, and a hearing was scheduled for March 20, 2007. Before the hearing began, counsel filed a motion in limine seeking to exclude the clinic report and a motion of a type envisioned by G. L. c. 6, § 178K(2)(*d*), for relief from the obligation to register. The hearing examiner denied both motions.[12] After the ensuing hearing, a brief affair solely concerned with placing documents on the record, the

___

level and duty to register. G. L. c. 6, § 178L(1). See *Doe, Sex Offender Registry Bd. No. 3844* v. *Sex Offender Registry Bd.*, 447 Mass. 768, 771-772 (2006). If the putative registrant challenges the SORB's recommendation, then, in the second step, he or she is entitled to a de novo evidentiary hearing before a hearing examiner, who makes the final classification determination based on "a preponderance of [the] evidence" presented at the hearing. G. L. c. 6, § 178L(2), inserted by St. 1999, c. 74, § 2.

[10]On the Juvenile Court form, the officer checked a box labeled "Release of the entire Court Clinic Report," electing in the process not to seek release of a redacted version of the report, which was an option the form contained. The officer, however, supplied no reasons for seeking an unredacted release in the space the form provided. In the multiple choice menu on the form beneath the words "The Court Clinic Report will be used by those receiving it for:" the officer checked boxes marked "Mental health evaluation or treatment" and "Other," though she provided no description of the "Other" in the space the form contained for those who checked that box.

[11]The record reveals that counsel was appointed after the SORB made the level two classification. It does not reveal, however, compliance with the provision of G. L. c. 6, § 178L(1)(*c*), inserted by St. 1999, c. 74, § 2, requiring "notification . . . to [a juvenile's] legal guardian or [the] agency having custody of [him or her] in the absence of a legal guardian and his most recent attorney of record" of the right to make submissions to the SORB before the initial classification decision. The plaintiff does not raise any issue here regarding compliance or noncompliance with that requirement.

[12]The § 178K(2)(*d*) motion was supported by a letter from two of the plaintiff's treatment providers at the RFK Center who, after observing that

examiner found that the plaintiff was at a moderate risk to reoffend and posed a moderate level of danger to the community. As a result the examiner imposed the level two classification. He made that classification notwithstanding his findings that the plaintiff's probation supervision, his placement in the custody of DCF, and his participation in sex offender therapy at the RFK Center were "fact[s] that minimize[d] his risk to reoffend and degree of dangerousness."

The plaintiff then sought judicial review of the decision in Superior Court. See G. L. c. 6, § 178M; G. L. c. 30A, § 14. He challenged the hearing examiner's use of the clinic report, arguing first that its ex parte release violated the confidentiality protections conferred by Juvenile Court Standing Order I-84 (1984) and the right to counsel guaranteed both by the Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights. He further argued that the examiner misapplied SORL's "aggravating factors" in making the classification decision. Finally, the plaintiff urged that the classification and registration scheme as a whole is unconstitutional as applied to prepubescent offenders.

In a decision and order dated January 8, 2009, a judge of the Superior Court affirmed the SORB's decision. In doing so, the judge stated that his affirmance did not mean he was

> "unmoved by the unique factual circumstances presented by this case. In fact, the court expresses concern that much was made of the fact that the plaintiff assaulted an 'extra-vulnerable' victim, a seven year old boy, while the plaintiff's own status as a ten year old boy appears to have been, to some extent, overlooked. Nevertheless, the court must be guided by appellate precedent and affirm the SORB's decision."

The plaintiff now appeals.

---

"[c]hild development research shows that children's level of psychological maturity, cognitive ability, and social responsibility are still evolving and fluid when compared with adults," urged that a classification decision be postponed until the plaintiff completed the course of treatment he was then undergoing. The examiner rejected the request, saying that the SORB had an obligation to classify promptly offenders who had "access to the community" and any impact on the plaintiff from the classification decision had to give way to the "legitimate concerns of public safety."

*B. Discussion.* 1. *Ex parte acquisition of the report.* Juvenile Court Standing Order I-84 protects the confidentiality of Juvenile Court case records and reports by requiring permission from the court before those documents can be released to individuals other than court personnel.[13] In this case, the SORB did in fact obtain court permission for release of the clinic report in compliance with Standing Order I-84.[14] The real question, therefore, is whether the ex parte proceeding in which permission to release the report was obtained violated the plaintiff's constitutional right to counsel. We think it did not.

The Sixth Amendment to the United States Constitution and art. 12 of the Massachusetts Declaration of Rights provide a right to counsel in criminal proceedings. *Commonwealth* v. *Woods*, 427 Mass. 169, 174-175 (1998) (right to counsel does not apply to probationary evaluation as probationer is no longer criminal defendant). Although classification and registration under SORL may touch on liberty interests, the proceedings are not criminal in nature, see *Doe, Sex Offender Registry Bd. No. 151564* v. *Sex Offender Registry Bd.*, 456 Mass. 612, 618 (2010), and therefore do not implicate the right to counsel under either constitutional provision. See *Doe, Sex Offender Registry Bd. No. 1* v. *Sex Offender Registry Bd.*, 79 Mass. App. Ct. 683, 694 (2011) (because SORL is not criminal, no right to confront witnesses at classification hearing under Sixth Amendment or art. 12). See also *Doe, Sex Offender Registry Bd. No. 10800* v. *Sex*

---

[13]Standing Order I-84, entitled "Juvenile Court Case Records and Reports," provides:

> "All juvenile court case records and reports are confidential and are the property of the court.
>
> "Reports loaned to or copied for attorneys of record, or such other persons as the court may permit, shall be returned to the court after their use or at the conclusion of the litigation, whichever occurs first.
>
> "Said reports shall not be further copied or released without permission of the court."

[14]We note the anomaly arising from the imposition on a ten year old child of the stigma and burdens of registration based on information extracted from a diagnostic report created for his aid and assistance in a juvenile proceeding designed for children, like him, who are "in need of aid, encouragement and guidance." G. L. c. 119, § 53. See generally *Commonwealth* v. *Magnus M.*, 461 Mass. 459, 461, 466-467 (2012).

*Offender Registry Bd.*, 459 Mass. 603, 624 (2011) (finding it "significant" to defendant's claim under First Amendment to United States Constitution that classification hearings are not criminal, but ultimately denying claim for lack of standing). Consequently, the plaintiff's constitutional right to counsel was not violated by the ex parte proceeding.[15]

2. *The SORB's use of the court clinic evaluation.* The SORB hearing examiner's written decision relies heavily on the contents of the evaluation prepared by the Juvenile Court clinic. That evaluation contains an extensive factual history regarding the plaintiff and his family, much of it based on layered, or totem pole, hearsay. The plaintiff attacks some of that history as unreliable and contends that it should not have been used as a basis for his classification.

We assess the plaintiff's claims, as we must, in the context of our obligation to "determine whether the decision of the board is supported by substantial evidence." *Doe, Sex Offender Registry Bd. No. 10304* v. *Sex Offender Registry Bd.*, 70 Mass. App. Ct. 309, 311-312 (2007) (*Doe, No. 10304*). See *Doe, Sex Offender Registry Bd. No. 1211* v. *Sex Offender Registry Bd.*, 447 Mass. 750, 764 (2006). Although the rules of evidence do not apply to a classification hearing, the evidence used to classify an individual must be reliable, i.e., "such evidence as a reasonable mind might accept as adequate to support a conclusion." See G. L. c. 30A, § 1(6), inserted by St. 1954, c. 681, § 1; *Doe, No. 10304*, 70 Mass. App. Ct. at 312-313. Hearsay with adequate indicia of reliability may provide "substantial evidence." *Doe, No. 10304*, *supra* (victim's story as recounted in police report, which was corroborated by petitioner's testimony, had sufficient indicia of reliability to support SORB's classification). Hearsay without such indicia, however, does not constitute substantial evidence. *Ibid.* See *Embers of Salisbury, Inc.* v. *Alcoholic Bev. Control Commn.*, 401 Mass. 526, 530 (1988); *Doherty* v. *Retirement Bd. of Medford*, 425 Mass. 130, 140 (1997) ("[A]n administrative agency may rely on [hearsay], so

---

[15]As the parties have neither raised nor briefed the question, we express no opinion whether the SORL contains or implies a statutory right to counsel at all stages of SORB proceedings involving juveniles. See G. L. c. 6, § 178E(*a*), (*b*), & (*c*); § 178F; § 178F¹/₂; § 178L(1)(*a*), (1)(*c*), & (2).

long as those [statements] bear 'reasonable indicia of reliability' ''); *Covell* v. *Department of Social Servs.*, 439 Mass. 766, 786 (2003) (''Substantial evidence may be based on hearsay alone if that hearsay has 'indicia of reliability' ''); *Scully* v. *Retirement Bd. of Beverly*, 80 Mass. App. Ct. 538, 545 n.9 (2011) (''The Supreme Judicial Court has held that hearsay is admissible in pension revocation hearings, but only if it bears the requisite 'indicia of reliability' '').

The evaluation report contains hearsay at three different layers. At the top level are statements by the plaintiff and his mother directly to the evaluator. At the next level are statements by the plaintiff and his mother to a licensed clinical social worker at the special needs program the plaintiff attended. The social worker recounted these statements to the evaluator. Also at that level are statements made to the evaluator by several clinicians and caseworkers recounting alleged sexual or physical incidents that the clinicians and caseworkers did not witness and for which they did not identify any witnesses. The essence of these statements, as characterized by the examiner in his report, are that the plaintiff ''was accused of sexually touching other male and female classmates, was observed making sexual overtures toward a male classmate and touching a female classmate on her buttocks and (on at least one occasion) was found to have brought pornographic material to school.''

Finally, the evaluation report contains one statement at three levels of hearsay, i.e., a quotation from a written evaluation describing a DCF report of an incident said to have occurred when the plaintiff was four years old.[16] According to the quotation from the evaluation summarizing the DCF report, the plaintiff was ''seen in a bathroom with a three year old girl inserting his fingers into her vagina and bottom.'' The source of the report is not identified nor are any witnesses named. The plaintiff's mother, who likewise was not a witness, said that she had been told that he was naked when found in the bathroom of the day care center he was attending. Nothing in the record shows how he got to the bathroom, how the little girl got there, how they were able to remain unobserved while the incident unfolded,

---

[16]That incident occurred before the plaintiff was seven and subject to Juvenile Court jurisdiction. See G. L . c. 119, § 52.

how and by whom they were discovered, or what remedial or corrective measures occurred after the incident. Indeed, even the source of the DCF record is unexplained, for the plaintiff's DCF caseworker, whom the juvenile clinic evaluator did interview, said DCF became involved with the plaintiff after the incident with the seven year old boy and made no mention of the incident in the day care center some six years earlier.

The SORB hearing examiner noted that "[t]here is little detailed information concerning these reported episodes of sexually inappropriate behavior and, aside from [the alleged incident when the plaintiff was four,] no information concerning [the plaintiff's] age when these acts were committed." However, he continued by stating that he found "by a preponderance of the evidence that these incidents occurred because they were presumably discovered or witnessed by adult staff members." That led him to conclude that the plaintiff "has a history of sexually inappropriate behavior." Based on that conclusion, he found that "it was not out of character for [the plaintiff] to have committed his 2004 sex offenses, nor were they isolated events."

"[T]o determine the reliability of the multi-level hearsay statements, we look to the circumstances under which [the accounts] were made." *Edward E.* v. *Department of Social Servs.*, 42 Mass. App. Ct. 478, 484 (1997). As the examiner noted, the record here is devoid of information about the circumstances under which they were made. Moreover, some, like the statement about the plaintiff's "sexual overtures toward a male classmate," necessarily reflect an observer's interpretation or characterization of an event he or she witnessed. None of the individuals who witnessed the various alleged incidents are identified. The circumstances surrounding the events and the statements about them are entirely unknown. Apart from the incident when the plaintiff was four years old, there is little detail regarding any incident. Even as to that incident, there is no context in which to place the dramatic assertions the DCF report contains and no indication that anyone was sufficiently concerned about whatever happened to begin remedial or corrective measures. Though some of the incidents are mentioned by more than one source, "statements supported with little, if

any, indicia of reliability do not attain trustworthiness through a process of repetition." *Id.* at 486.[17]

In *Doe, No. 10304*, 70 Mass. App. Ct. at 312-313, we said that the SORB

> "may receive and consider evidence of a kind 'on which reasonable people are accustomed to rely in the conduct of serious affairs,' 803 Code Mass. Regs. § 119(1), [but] a non-eyewitness police report, standing alone, cannot constitute substantial evidence within the meaning of G. L. c. 30A. . . . However, particular narratives related therein may be admissible in board hearings depending on the general plausibility and consistency of the victim's or witness's story, the circumstances under which it is related, the degree of detail, the motives of the narrator, the presence or absence of corroboration and the like."

None of the statements considered by the examiner in this case contains those indicia of reliability. They provided the foundation for the examiner's conclusions and they should not have been used.

3. *Application of regulatory factors.* The plaintiff next argues that the SORB examiner erred when he used several risk factors relating to the victim's age to classify the plaintiff as a level two offender without taking into account the plaintiff's own age at the time of the offense and without explaining why the factors were applicable despite the plaintiff's youthful status. The factors in question, each of which the examiner applied as aggravating

---

[17]The examiner's conclusion "by a preponderance of the evidence that these incidents occurred because they were presumably discovered or witnessed by adult staff members" embodies a unique and entirely unpersuasive approach to the concept of "preponderance of the evidence." Obviously, the written accounts were made by adults and, in that sense alone, the alleged incidents were "discovered" by an adult. There is no basis in the record, however, for "presuming" that any adult witnessed any of the events. Moreover, there is no basis for determining whether the information the reports contained was based on accounts by the plaintiff's peers, the parents of the plaintiff's peers, someone to whom the parents of his peers relayed the accounts, or information provided by those even more distant in the information chain. The preponderance of the evidence the examiner found, therefore, flowed from the presumed accuracy of unverified reports made by unknown informants with information of unknown veracity. That is the paradigm of a self-wielding sword.

factors heightening the plaintiff's risk of reoffending, were that (1) the plaintiff was a juvenile who sexually assaulted a prepubescent child;[18] (2) the plaintiff committed the offense against an "extra-vulnerable" victim;[19] (3) the plaintiff committed sex offenses involving a child and a sexually violent offense;[20] (4) the plaintiff offended in a public place;[21] and (5) the plaintiff is male and the victim is also male.[22]

All five factors are among those set out in regulations the SORB promulgated to guide classification decisions. See 803 Code Mass. Regs. § 1.40 (2002). The regulatory factors are illustrative and permissive — an examiner has broad discretion over how he or she chooses to apply them. See 803 Code Mass. Regs. § 1.40.

Judicial review of the SORB's application of its own regulations, of course, must take into account the SORB's discretion and its expertise in matters within its purview. See *Doe, Sex Offender Registry Bd. No. 89230* v. *Sex Offender Registry Bd.*, 452 Mass. 764, 781 (2008) (Spina, J., concurring); *Hotchkiss* v. *State Racing Commn.*, 45 Mass. App. Ct. 684, 695-696 (1998). At the same time, a reviewing court must ensure that the SORB's action is "in harmony with the legislative mandate," *Doe, Sex Offender Registry Bd. No. 941* v. *Sex Offender Registry Bd.*, 460 Mass. 336, 339 (2011), and is supported by substantial evidence. In fulfilling the latter obligation, the court must take into account not only the evidence that supports the SORB's decision but "whatever in the record fairly detracts from its weight." *New Boston Garden Corp.* v. *Assessors of Boston*, 383 Mass. 456, 466 (1981), quoting from *Cohen* v. *Board of Registration in Pharmacy*, 350 Mass. 246, 253 (1966). Beyond that, the SORB's decision must show that the classification is based on a sound exercise of informed discretion rather than the mechanical application of a checklist or some other reflex. Any other approach would effectively insulate the SORB's action from effective review. See *Oyster Creek Preservation, Inc.* v.

[18]803 Code Mass. Regs. § 1.40(3) (2002).

[19]803 Code Mass. Regs. § 1.40(9)(c)(4) (2002).

[20]803 Code Mass. Regs. § 1.40(9)(c)(12) (2002).

[21]803 Code Mass. Regs. § 1.40(9)(c)(1) (2002).

[22]803 Code Mass. Regs. § 1.40(9)(c)(2) (2002).

*Conservation Commn. of Harwich,* 449 Mass. 859, 866 n.12 (2007); *Pollard* v. *Conservation Commn. of Norfolk,* 73 Mass. App. Ct. 340, 351 (2008). See generally *Conroy* v. *Conservation Commn. of Lexington,* 73 Mass. App. Ct. 552, 563 n.14 (2009) ("[A]dministrative decisions containing . . . thorough explanations will aid courts immeasurably in any subsequent appellate review").

While the general validity of the regulations the examiner applied to the plaintiff requires no extended discussion, the applicability of those regulations to someone of the plaintiff's age at the time of the offenses is entirely unclear. Indeed, the regulations appear to have been written with a much older offender in mind. But the examiner's opinion contains a bare-bones recitation of regulatory text, nothing more. Under those circumstances, application of those factors to the plaintiff was both arbitrary and capricious. We discuss each factor in turn.

a. *Prepubescent victim.* The examiner applied to the plaintiff a SORB regulation stating that "[j]uvenile [o]ffenders are considered to present a higher risk of reoffense if they have ever intentionally sexually assaulted a prepubescent child." 803 Code Mass. Regs. § 1.40(3). The regulation goes on to say, however, that "[t]he SORB, recognizing the occurrence of sexual experimentation between similar aged adolescents, shall view the offender who engaged in sexual conduct that, but for the age of the victim, would not have been criminal and the child victim was not less than 13 nor more than 15 years of age and not five or more years younger than the offender at the instant of the offense as possibly presenting a lower degree of dangerousness."

On its face, that regulation, with its focus on "adolescent" sexual experimentation, does not appear to have been written with a ten year old offender in mind. If it was not, then application to the plaintiff was error. If it was, then the SORB has concluded that, for example, a ten year old who offends with a seven year old inherently presents a greater social risk than a seventeen year old who offends with a thirteen year old. The basis for such a conclusion is not, to say the least, intuitively obvious. But the examiner provided no explanation, stating simply that "[a]ccording to the [SORB's] regulations, juvenile offenders are considered to present a higher risk of reoffense if

they have ever intentionally sexually assaulted a prepubescent child."

b. *Extra-vulnerable victim.* SORB regulations provide that "extra-vulnerable" victims are those with a condition or circumstance rendering them more susceptible to sexual assault, and "include a victim under the age of ten." 803 Code Mass. Regs. § 1.40(9)(c)(4). This factor "demonstrates the deviancy of the offender who chooses victims who cannot adequately defend themselves and/or effectively report the abuse . . . . The offender poses a greater risk to public safety since his crimes are difficult to detect and prosecute." 803 Code Mass. Regs. § 1.40(9)(c)(4).

The general validity of that regulation requires no extended discussion. But its applicability to the plaintiff and to this offense is again far from self-explanatory. The plaintiff was offending with a near peer. Moreover, he was doing so in the presence of the victim's brother, an actual peer and classmate, in the middle of the brothers' backyard, hardly a circumstance that made his activity difficult to detect or to prosecute. Without an explanation of how the regulation applies to an offense or offender like the plaintiff, it appears that the regulation was applied to circumstances for which it simply was not created. The examiner supplied no such explanation.

c. *Sex offense involving children.* General Laws c. 6, § 178C, the definitions section of the SORL, defines the crime of indecent assault and battery on a child under fourteen as a "[s]exually violent offense" and the crime of rape of a child without force as a "[s]ex offense involving a child." Building on that definition, "SORB has determined that the commission of one or more of these offenses, in and of itself, demonstrates an increased risk to children and other vulnerable persons." 803 Code Mass. Regs. § 1.40(9)(c)(12).

The increased risk determination embodied in § 1.40(9)(c)(12) flows from several conclusions stated earlier in the regulation. At the outset, § 1.40(9) states that "[a]n offender's prior criminal history is significantly related to his likelihood of sexual recidivism and degree of dangerousness, particularly when his past includes violent crimes or sex offenses." 803 Code Mass. Regs. § 1.40(9). That thought is continued in § 1.40(9)(c),

which states that "[m]uch can be learned about an offender by studying the nature of the offenses he has committed, including the level of dangerousness the offender has demonstrated . . . . Based on its review of the research, the [SORB] found the presence of deviant sexual interests dramatically increases the risk of reoffending and that the strongest deviant sexual interests have empirically been found to be more prevalent among those offenders who victimize strangers, prepubescent children, nonconsenting males, vulnerable persons, and/or use excessive force."

Because the plaintiff's delinquency adjudications were based on criminal offenses statutorily defined as "sexually violent" and "involving a child," the hearing examiner utilized the regulation in making the level two classification decision. Again, however, the decision contains no explanation regarding how the statutory and regulatory generalities apply to the plaintiff's act. The plaintiff directed no force or violence at the young boy in connection with the activity that led to the charges, though he did direct some at the boy's brother after he ran away. Instead, the plaintiff's indecent assault and battery was "violent" for SORB purposes only because it falls in that statutory classification.[23] See G. L. c. 6, § 178C, definition of "[s]exually violent offense." But nothing in the statute suggests that the Legislature intended its routine application to sexual encounters between prepubescent children, in the process turning every sexual encounter between the very young into a violent felony. Moreover, apart from rote application of the statute and regulation to the case before him, nothing in the examiner's decision explains why either the definition or the considerations contained in the regulation apply to the facts the record reveals.

d. *Public place.* Under the SORB's regulations, "[t]he commission of any sex offense in a place where detection is more likely addresses the offender's lack of impulse control and/or the strength of sexual deviance." 803 Code Mass. Regs. § 1.40(9)(c)(1). A "[p]ublic place" is "an area maintained for or used by the people or community, or an area that is open to the scrutiny of others." *Ibid.*

---

[23]As noted earlier, it is unclear why the plaintiff was found delinquent of that offense in the first place. See note 8, *supra.*

The examiner applied this factor to the plaintiff, stating simply that the plaintiff had "no reasonable expectation of privacy" in the backyard. That is surely true, not only because of the setting but also because of the presence of the victim's brother. But "as any parent knows and as the scientific and sociological studies . . . tend to confirm, '[a] lack of maturity and an underdeveloped sense of responsibility are found in youth more often than in adults and are more understandable among the young. These qualities often result in impetuous and ill-considered actions and decisions.' " *Roper* v. *Simmons*, 543 U.S. 551, 569 (2005), quoting from *Johnson* v. *Texas*, 509 U.S. 350, 367 (1993). It is possible, perhaps, that there is some basis for concluding that the nexus between the impetuous and ill-considered action of a ten year old and the extent of his sexual deviance is similar to the nexus between impetuous action and sexual deviance in a mature adult. But that similarity is not obvious.[24] Some explanation was therefore required before that factor was applied to the plaintiff.

e. *Male offending on another male.* Finally, the hearing examiner relied on 803 Code Mass. Regs. § 1.40(9)(c)(2), which applies when a male offender commits a sex offense with a male victim. In the examiner's words, "the commission of a sex offense by . . . a male offender upon a male victim supports a heightened degree of deviancy and higher degree of dangerousness and risk of re-offense." Whatever basis there may be for the SORB's determination that this factor generally enhances the risk of reoffending, some explanation is surely needed for application of the factor to a prepubescent child who may neither understand nor have developed the kind of sexual identity that makes application of the factor relevant.[25] Once more, there was no explanation.

---

[24]Indeed, the entire juvenile justice system is built upon a premise that there are sound reasons for utilizing different approaches to the antisocial behavior of juveniles and that of adults. See generally *Commonwealth* v. *Magnus M.*, 461 Mass. at 461; Ireland, Juvenile Law § 1.3, at 18 (2d ed. 2006) ("The rationale of [the] dual system [for adult and juvenile offenders] is diminished culpability: deviant behavior of children may be regarded as generally less culpable than similar adult behavior for the reason that a child's capacity to be culpable [e.g., his or her capacity to know right from wrong and control his or her impulses] is not as fixed or as absolute as that of an adult").

[25]We note without comment that there is some debate over the use of

In sum, each of the five factors discussed above springs from a conclusion that an offender's choice of a victim's age, sex, or location indicates a greater risk of deviancy and increase the likelihood of reoffense. But a sound application of those factors to derive a true and accurate assessment of an offender's potential for reoffending must take into account the offender's age. Indeed, the Supreme Judicial Court held in *Doe, Sex Offender Registry Bd. No. 151564* v. *Sex Offender Registry Bd.*, 456 Mass. at 621-623, that it was arbitrary and capricious for the SORB to apply its regulations to offenders over sixty without taking into account studies showing how advancing age reduces the likelihood of recidivism. The same can surely be said with regard to applying the general factors to prepubescent offenders who engage in sexual activity with near peer prepubescents, despite studies referenced in the record showing the differences between the psychological development and outlook of children and mature adults. Here, the factors were applied without considering the plaintiff's age and led the examiner to impose a level two classification despite his finding that the probation supervision the plaintiff was receiving, his placement in the custody of DCF until age eighteen, and his participation in various therapies designed to deal with his manifest emotional needs "minimiz[ed] [his] risk to reoffend and [his] degree of dangerousness."

On this record, there is no question that the plaintiff is a deeply troubled youngster in need of the services he is receiving and from which one hopes that he will benefit. But the classification decision rested on unreliable hearsay and the application without explanation of predictive criteria that do not on their face take account of sexual activity between prepubescent children. The judgment of the Superior Court is reversed, and the case is remanded to that Court for entry of a judgment vacating the SORB's classification order.

*So ordered.*

sexual orientation as a risk factor. But see *Doe, Sex Offender Registry Bd. No. 15606* v. *Sex Offender Registry Bd.*, 452 Mass. 784, 792 n.10 (2008) (subsection § 1.40[9][c][2] does not violate equal protection).