NOTICE: Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale. Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent. See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

23-P-875

JOHN DOE SEX OFFENDER REGISTRY BOARD NO. 114167

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff appeals from a Superior Court judgment affirming the decision of the Sex Offender Registry Board (board or SORB) classifying him as a level two sex offender in accordance with G. L. c. 6, § 178K (2) (b). On appeal, the plaintiff argues that the board's classification was not supported by substantial evidence, that the hearing examiner erred by failing to consider the plaintiff's young age at the time of his offenses, and that the hearing examiner abused his discretion by denying the plaintiff's motion for expert funds. We affirm.

Discussion. 1. Plaintiff's classification and standard of review. When classifying a person as a level two offender, a

hearing examiner must determine the following by clear and convincing evidence:

"(1) that the risk of reoffense is moderate; (2) that the offender's dangerousness, as measured by the severity and extent of harm the offender would present to the public in the event of reoffense, is moderate; and (3) that a public safety interest is served by Internet publication of the offender's registry information."

Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 644 (2019) (Doe No. 496501). See G. L. c. 6, § 178K (2) (b). "In determining whether these elements have been established by clear and convincing evidence, a hearing examiner may consider subsidiary facts that have been proved by a preponderance of the evidence." Doe No. 496501, supra at 656. The hearing examiner's discretion is "guided by . . . [several] statutory risk factors" and various "aggravating and mitigating considerations." Doe, Sex Offender Registry Bd. No. 23656 v. Sex Offender Registry Bd., 483 Mass. 131, 134 (2019). See G. L. c. 6, § 178K (1); 803 Code Mass. Regs. § 1.33 (2016).

"We review a judge's consideration of an agency decision de novo." Doe, Sex Offender Registry Bd. No. 523391 v. Sex Offender Registry Bd., 95 Mass. App. Ct. 85, 89 (2019). "A reviewing court may set aside or modify SORB's classification decision where it determines that the decision is in excess of SORB's statutory authority or jurisdiction, violates

2

constitutional provisions, is based on an error of law, or is not supported by substantial evidence." Doe No. 496501, 482 Mass. at 649. "In reviewing SORB's decisions, we give due weight to the experience, technical competence, and specialized knowledge of the agency" (quotation and citation omitted). Id. See G. L. c. 30A, § 14 (7).

Here, at approximately 10 P.M. on November 14, 2004, when the plaintiff was sixteen years old, the plaintiff confronted victim 1, a twenty-four year old woman stranger, at gunpoint as she was entering her apartment and demanded money. Victim 1 gave the plaintiff twelve dollars. The plaintiff then forced victim 1 into her apartment, and, after searching and learning there was no more money, forced his penis into victim 1's mouth at gunpoint. The plaintiff vaginally raped victim 1, digitally and with his penis, after which he bound victim 1's hands and legs with an extension cord and gagged her. Thereafter, when victim 1's roommate returned to the apartment -- also an adult woman the plaintiff did not know (victim 2) -- the plaintiff threatened victim 2 with the gun, bound and gagged victim 2, and stole victim 2's debit card. On March 6, 2007, the plaintiff pleaded delinquent in the Juvenile Court to three counts of aggravated rape (governing offenses), one count of home invasion, two counts of armed robbery, two counts of kidnapping, two counts of assault and battery by means of a dangerous

weapon, and two counts of unlawful possession of a firearm. The plaintiff was sentenced to a prison term of sixteen to twenty years with ten years of supervised probation to follow. He was released from incarceration in January 2022.

In determining the plaintiff's final classification level, the hearing examiner applied four risk-elevating factors associated with the governing offenses. These factors included factor 7, stranger victim, 803 Code Mass. Regs. § 1.33(7), because victim 1 was not related to the plaintiff; factor 8, weapon, violence or infliction of bodily injury, 803 Code Mass. Regs. § 1.33(8), because the plaintiff sexually assaulted victim 1 at gunpoint; factor 9, alcohol and substance use, 803 Code Mass. Regs. § 1.33(9), because the plaintiff had a history of substance misuse and testified that he smoked "weed" on the day of the offenses; and factor 19, level of physical contact, 803 Code Mass. Regs. § 1.33(19), because the plaintiff penetrated victim 1 three times, twice with his penis.

The hearing examiner also applied three risk-elevating factors associated with the plaintiff's incarceration, criminal behavior, and community supervision. These factors included factor 10, contact with the criminal justice system, 803 Code Mass. Regs. § 1.33 (10), because the plaintiff had a moderate juvenile criminal history prior to committing the governing offenses and was charged with and convicted of additional

4

offenses when he was incarcerated as an adult;[1] factor 11, violence unrelated to sexual assaults, 803 Code Mass. Regs. § 1.33(11), because the plaintiff received a continuance without a finding (CWOF) on a charge of unarmed robbery in 2003 and was charged with assault and battery on a public employee in 2008; and factor 13, noncompliance with community supervision, 803 Code Mass. Regs. § 1.33(13), because the plaintiff committed the governing offenses while on conditions of community release by the Department of Youth Services (DYS).

The hearing examiner then applied five-risk mitigating factors, taking note of the plaintiff's supervision by probation, participation in sex offender treatment, home and familial support systems, and of the materials submitted by the plaintiff pertaining to stability in the community. See 803 Code Mass. Regs. § 1.33(28), (32), (33), (34). The hearing examiner further considered the psychosocial assessment provided by the plaintiff pursuant to factor 35, 803 Code Mass. Regs. § 1.33(35), as well as the two articles the plaintiff submitted regarding juvenile sex offender recidivism, although the hearing examiner gave these articles no additional weight, 803 Code

---

[1] In September 2006, the plaintiff received a continuance without a finding on a charge of possession of a class D controlled substance and a two-year committed sentence for delivering drugs to a prisoner. He was also charged as an adult with assault and battery on a public employee, which was dismissed in July 2008.

5

Mass. Regs. § 1.33(37). Based on his analysis and weighing of these factors, the hearing examiner concluded that the plaintiff's risk of reoffense and degree of dangerousness were moderate, and that the public interest was served by Internet publication of his registry information.

2. Substantial evidence. The plaintiff argues that his classification was not supported by substantial evidence because the hearing examiner (1) engaged in an improper "mechanical application" of the risk factors and (2) misapplied factor 11, violence unrelated to sexual assaults, by improperly relying on two incidents from his probation records despite a lack of evidence that he acted violently on those occasions. Although we agree that the hearing examiner misapplied factor 11, these arguments are ultimately unavailing.

An offender's "final classification level is not based on a cumulative analysis of the applicable factors, but rather a qualitative analysis of the individual sex offender's history and personal circumstances." Noe, Sex Offender Registry Bd. No. 5340 v. Sex Offender Registry Bd., 480 Mass. 195, 197 (2018), quoting 803 Code Mass. Regs. § 1.33 (2016). Here, contrary to the plaintiff's argument, the hearing examiner engaged in a qualitative analysis. In applying each of the factors he found relevant, the hearing examiner analyzed how the facts of the governing offenses as well as the plaintiff's history and

6

personal circumstances led to the application of each factor. The hearing examiner also directly addressed how the application of the factors he cited led to his conclusion that the plaintiff poses a moderate risk of reoffense, a moderate degree of dangerousness, and that a public safety interest is served by Internet publication.  Accordingly, we discern no error.  Noe No. 5340, supra.

Furthermore, although the hearing examiner is entitled to "assess the reliability of the exhibits introduced into evidence and . . . draw all reasonable inferences therefrom," 803 Code. Mass. Regs. § 1.19(h) (2016), we agree with the plaintiff that the probation and accompanying police reports that the hearing examiner solely relied on to apply factor 11 do not sufficiently establish that the plaintiff had a history of nonsexual violence.  For example, while the reports show that the plaintiff received a CWOF for unarmed robbery in 2003 and had a charge for assault and battery on a public employee dismissed in 2008, the reports contain no details regarding whether the plaintiff engaged in violence during those incidents.  See Commonwealth v. Mora, 477 Mass. 399, 407-408 (2017) (dismissing violent crime sentence enhancements where defendant committed unarmed robbery but there was no evidence defendant acted violently).  Notwithstanding, after reviewing the hearing examiner's application of the remaining risk factors, we

conclude that there is still substantial evidence to support the plaintiff's level two classification and that any error in applying factor 11 did not materially affect the outcome.[2]  See Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 639 (2011) (finding substantial evidence to support classification "separate and apart" from hearing examiner's consideration of purportedly unreliable statements).

3.  Plaintiff's age at time of his offense.  The plaintiff also challenges his classification by arguing that the hearing examiner failed to fully consider his age when assessing his risk of reoffense and degree of dangerousness.  This argument is also unavailing.

As an initial matter, the board's regulatory risk factors take into consideration the differences between adult and juvenile offenders.  See 803 Code Mass. Regs. § 1.33.  See also G. L. c. 6, § 178K (1) (e) (acknowledging that factors relevant to person's classification include whether offender was a juvenile).  Indeed, before a person is even classified as a sex offender, a different procedure is followed for persons who

_____

[2] The plaintiff points out that the examiner did not apply any high-risk factors, but this has no bearing on our analysis. See Doe, Sex Offender Registry Bd. No. 10216 v. Sex Offender Registry Bd., 447 Mass. 779, 788 (2006) ("[n]either the statute nor the regulations specify that the inapplicability of a certain factor weighs in favor of an offender").

8

committed sexual offenses as juveniles.  See G. L. c. 6,
§ 178L (1).  For example, the board's regulations require that
the classification of a juvenile sex offender (JSO) must be done
"by the [b]oard member who is a licensed psychologist or
psychiatrist with special expertise in the assessment and
evaluation of juvenile sex offenders."  803 Code Mass. Regs.
§ 1.06(5) (2016).  Additionally, although the hearing examiner
must make a qualitative decision with an offender's unique
circumstances in mind, Noe No. 5340, 480 Mass. at 197, the
plaintiff cites no authority suggesting that the hearing
examiner must rely on any materials outside of the risk factors
when classifying juvenile offenders.[3]

Likewise, while the plaintiff argues that the hearing
examiner erred by declining to give additional weight to the two
articles he submitted regarding JSO recidivism, this argument

---

[3]  The plaintiff's reliance on Doe, Sex Offender Registry
Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct.
639 (2012), is misplaced.  In that case, we found that the
hearing examiner erred by failing to consider the young age of a
ten year old offender when applying certain risk-elevating
factors that "appear to have been written with a much older
[juvenile] offender in mind."  Id. at 652.  In contrast, the
plaintiff was sixteen years old at the time he committed the
governing offenses, and each of the relevant risk-elevating
factors squarely apply to juvenile offenders who have attained
the age of sixteen.  See 803 Code Mass. Regs. §§ 1.33(7), (8),
(9), (10), (11), (13), (19), (27).

also fails.[4]  Although hearing examiners should consider scientific studies submitted by an offender if they present new evidence not contemplated by the regulations, Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 605-606 (2013), the articles the plaintiff presented do not establish "that any of the included risk factors are no longer relevant or reliable to a determination of the risk of reoffense."  Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 621-622 (2010).  For example, the Fanniff article[5] states that "being a high-frequency juvenile offender (regardless of engaging in sexual crime) was the best predictor of adult sex offending," which is a conclusion shared by factor 10, which the hearing examiner applied to the plaintiff.  The Caldwell article[6] cites studies suggesting that the recidivism rates for JSOs have decreased significantly, but the mere existence of this data does not call

---

[4] We decline to consider an additional article that the plaintiff submitted titled "The Age of Redemption for Adolescents Who Were Adjudicated for Sexual Misconduct" because it was not submitted to the hearing examiner at the time of the classification hearing.  See G. L. c. 30A, § 14 (7) (review is to be confined to administrative record).

[5] Fanniff, et al., Juveniles Adjudicated for Sexual Offenses:  Fallacies, Facts, and Faulty Policy, Temple L. Rev. (2016).

[6] Caldwell, Quantifying the Decline in Juvenile Sexual Recidivism Rates, Psychology, Pub. Policy, and Law (2016).

into question how the hearing examiner applied the statutory and regulatory risk factors to the plaintiff's individual case. As such, we find no error in the hearing examiner's decision to give the two articles "no additional weight." See Doe No. 496501, 482 Mass. at 649.

4. Plaintiff's motion for expert funds. The plaintiff also submits that the hearing examiner abused his discretion by denying the plaintiff's motion for expert funds. We disagree.

"The board has discretion to grant funds to indigent offenders for an expert witness or report." Doe, Sex Offender Registry Bd. No. 339940 v. Sex Offender Registry Bd., 488 Mass. 15, 28 (2021) (Doe No. 339940). See Doe, Sex Offender Registry Bd. No. 89230 v. Sex Offender Registry Bd., 452 Mass. 764, 770 (2008) (Doe No. 89230). "The board's discretionary decision to grant or deny an offender's motion for expert funds is 'based on the facts presented in an individual case.'" Doe No. 339940, supra, quoting Doe No. 89230, supra at 775. A motion for expert funds must:

> "1. identify a condition or circumstance special to the sex offender and explain how that condition is connected to his or her risk of reoffense or level of dangerousness; 2. identify the particular type of Expert Witness who would provide testimony to assist the Hearing Examiner in his or her understanding and analysis; and 3. include supporting documentation or affidavits verifying the specific condition or circumstance that the offender suffers from."

11

803 Code Mass. Regs. § 1.16(4)(a) (2016).  We review the denial of a motion for funds for an abuse of discretion.  See Doe, Sex Offender Registry Bd. No. 58574 v. Sex Offender Registry Bd., 98 Mass. App. Ct. 307, 310 (2020) (Doe No. 58574).

Here, the plaintiff's motion for expert funds stated that expert testimony was necessary "to explain to what extent the passage of time, the natural maturation process, the impact of incarceration on the maturation process and brain development may have on [the plaintiff's] risk of sexual reoffense and degree of sexual dangerousness," where his sex offenses were committed as a juvenile, but following eighteen years of incarceration he is now an adult in his thirties.  The hearing examiner denied the plaintiff's motion on the grounds that the plaintiff's "status as a juvenile offender" is not a sufficiently unique circumstance under 803 Code Mass. Regs. § 1.16(4), and that the board's updated regulatory risk factors "specifically address juvenile offenders."

Although it is true that the risk factors do not directly confront how a juvenile offender's maturation while incarcerated might impact their risk to reoffend as an adult, as noted above, the risk factors do differentiate between juvenile and adult

12

offenders and the risks posed by each.[7]  Additionally, in his

application of the risk-mitigating factors, the hearing examiner

considered evidence regarding the plaintiff's maturation since

the time of his governing offenses.  For example, in applying

full weight to factor 34 regarding stability in the community,

the hearing examiner considered evidence that while incarcerated

the plaintiff passed the general educational development tests

(GED) and participated in "programs including Alternative to

Violence, Introduction to Microsoft and more"; has current plans

to attend community college; and maintains a full-time job.[8]

Accordingly, where the risk factors already contemplate the

differences between adult and juvenile offenders and the hearing

examiner considered evidence regarding the plaintiff's

maturation since the time of his offenses, we discern no abuse

of discretion in the denial of the plaintiff's motion for expert

---

[7] For example, factor 29 states that while the likelihood of recidivism for most juvenile offenders decreases after living in the community offense-free for three years, "the risk of reoffense decreases for most [adult] offenders after living in the community offense-free for five to ten years" (emphasis added).  803 Code Mass. Regs. § 1.33(29).

[8] Additionally, in applying full weight to factor 33, regarding the plaintiff's home situation and support systems, the hearing examiner heard testimony from the plaintiff that the "loss of his parents to prison in addition to negative social pressures [during his childhood] . . . [led him] into a lifestyle of gang involvement and drugs."

funds.  803 Code Mass. Regs. § 1.16(4)(a); <u>Doe No. 58574</u>, 98 Mass. App. Ct. at 310.

<u>Judgment affirmed</u>.

By the Court (Rubin, Desmond & Singh, JJ.[9]),

*Paul Little*

Clerk

Entered:  December 18, 2024.

---

[9] The panelists are listed in order of seniority.