NOTICE:  All slip opinions and orders are subject to formal
revision and are superseded by the advance sheets and bound
volumes of the Official Reports.  If you find a typographical
error or other formal error, please notify the Reporter of
Decisions, Supreme Judicial Court, John Adams Courthouse, 1
Pemberton Square, Suite 2500, Boston, MA, 02108-1750; (617) 557-
1030; SJCReporter@sjc.state.ma.us

SJC-11806

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 7083  vs.  SEX OFFENDER
REGISTRY BOARD.


        Plymouth.     March 5, 2015. - August 21, 2015.

   Present:  Gants, C.J., Spina, Cordy, Botsford, Duffly, Lenk, &
                        Hines, JJ.


Sex Offender.  Sex Offender Registration and Community
     Notification Act.  Constitutional Law, Sex offender.  Due
     Process of Law, Sex offender.  Practice, Civil, Sex
     offender.



     Civil action commenced in the Superior Court Department on
April 2, 2012.

     The case was heard by Paul E. Troy, J., on a motion for
judgment on the pleadings.

     After review by the Appeals Court, the Supreme Judicial
Court granted leave to obtain further appellate review.


     Ethan C. Stiles for the plaintiff.
     David L. Chenail for the defendant.
     Matthew J. Koes for John Doe, Sex Offender Registry Board
No. 3839, amicus curiae, submitted a brief.


     DUFFLY, J.  The plaintiff, John Doe, Sex Offender Registry

Board No. 7083 (Doe), was serving a criminal sentence at the

Massachusetts Treatment Center (treatment center), and also had been civilly committed to the treatment center as a sexually dangerous person (SDP), when the defendant Sex Offender Registry Board (SORB) notified him in September, 2009, of its recommendation that he be classified as a level three sex offender, pursuant to the sex offender registration statute, G. L. c. 6, §§ 178C-178Q.[1]  Doe requested a hearing to challenge SORB's recommendation.  When that classification hearing took place, in February, 2012, Doe's earliest parole eligibility date was ten months away, and a trial on Doe's petition for discharge, pursuant to G. L. c. 123A, § 9, had been scheduled for a date eighteen months away.[2]

Because each date was not only distant in time, but also only a potential date on which he might have become eligible for release, rather than a known release date, Doe requested that the classification hearing be continued to a date after, or shortly before, trial on his petition for discharge.  In the alternative, Doe sought to have the classification proceeding left open after

---

[1] The sex offender registration statute, G. L. c. 6, §§ 178C-178Q, as enacted by St. 1996, c. 239, § 1, was rewritten in 1999.  See St. 1999, c. 74, § 2.  The 1999 version is at issue here.

[2] Thereafter, the trial on Doe's petition for discharge was rescheduled for a date one year later than originally scheduled. Doe's subsequent motion to dismiss the petition was allowed, and he remained confined at the Massachusetts Treatment Center (treatment center) when he filed this appeal.

the hearing, so that his classification would not become final, and current evidence of his risk of reoffense would be available for the hearing officer to consider when his discharge was imminent. The hearing examiner denied the requests and classified Doe as a level three sex offender. Doe sought review in the Superior Court pursuant to G. L. c. 30A, §§ 7, and 14 (7), and G. L. c. 6, § 178M, arguing that his risk of reoffense was zero while he was confined at the treatment center, and that the denial of his request to continue or to leave open the classification hearing violated his right to due process. A Superior Court judge affirmed the hearing examiner's decision, and Doe appealed. A panel of the Appeals Court also affirmed, in an unpublished memorandum and order issued pursuant to its rule 1:28. Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 86 Mass. App. Ct. 1113 (2014). We granted Doe's application for further appellate review.[3]

Doe argues that, by scheduling the classification hearing based on his earliest possible parole eligibility date, the information relied on by the hearing examiner in reaching a classification decision inevitably will have become stale, and therefore potentially unreliable, by the time he is released from confinement, even if the determination of his level of risk was

---

[3] We acknowledge the amicus brief submitted by John Doe, Sex Offender Registry Board No. 3839.

based on appropriate factors when it was made.  Doe contends that 803 Code Mass. Regs. § 1.37C(2) (2013), which permits a sex offender to seek reclassification three years after a final classification, does not address adequately his due process concerns.[4]

SORB contends that the early classification was required here because there was a possibility that Doe could have been released prior to a trial on his petition for discharge.  SORB maintains that an individual who has been committed as an SDP may be released prior to the date of a trial on his or her petition for discharge pursuant to G. L. c. 123A, § 9, through one of two mechanisms.  First, the community access board (CAB) may file a petition for discharge under G. L. c. 123A, § 9, if it determines, in its annual review, that an individual committed as an SDP no longer is sexually dangerous.  Had the CAB determined at Doe's next annual review (which likely would have taken place a few months after the February, 2012, classification hearing) that Doe was no longer sexually dangerous, it could have filed its own petition for discharge, accompanied by a motion for an

---

[4] Doe cites a number of reasons in support of this contention.  He argues particularly that, under the regulations of the Sex Offender Registry Board (SORB), while a petition for reclassification may be filed every three years, a decision to reclassify a registered sex offender requires that the offender has remained offense-free for more than five continuous years "since his or her release from incarceration."  See 803 Code Mass. Regs. § 1.37C(2)(d) (2013).

expedited trial.[5]  Second, Doe could have filed a motion for an expedited trial on his petition for discharge if two qualified examiners opined, following their examination of Doe in conjunction with his petition, that he was no longer sexually dangerous.  See Matter of Johnstone, 453 Mass 544, 545, 553 (2009).  SORB maintains that any error in a premature classification may be remedied by its reclassification procedures.  See 803 Code Mass. Regs. § 1.37C(2).

We conclude that the hearing examiner's 2009 recommendation that Doe be classified as a level three sex offender, based on evidence presented at a time when a trial on his petition for discharge under G. L. c. 123A, § 9, was at least eighteen months away, risked classifying Doe based on factors that would be stale at the time of his discharge, in violation of due process protections.  The hearing examiner's 2012 final classification of

---

[5] SORB argues that, based on the possibility of a finding by the community access board (CAB) that Doe was no longer sexually dangerous,

"It was therefore conceivable that . . . within months after [SORB's] classification hearing, the CAB could find [Doe] no longer [a sexually dangerous person (SDP)] and on that basis, [Doe] could then have filed a motion seeking an expedited review by the qualified examiners and discharge trial. . . . In the event that the [c]ourt granted a motion for expedited review and trial, the offender could potentially have been released prior to the originally scheduled section 9 discharge trial.  Therefore, the initial trial date of August 2013 on [Doe's] section 9 discharge petition was not necessarily dispositive as to [Doe's] earliest possible release from his SDP commitment."

Doe as a level three sex offender embodies this result, and reflects an evaluation of Doe's risk that will be stale when Doe ultimately is discharged.  Nor are these procedural due process concerns adequately addressed by Doe's ability to request reclassification pursuant to 803 Code Mass. Regs. § 1.37C(1)-(9).

We note first that a final classification as a level three sex offender would permit SORB to require Doe to register as such while he is committed to the treatment center, albeit that the final classification occurs long before even his potential release date.  See G. L. c. 6, § 178I (information about level three sex offenders "shall be made available"); 803 Code Mass. Regs. § 1.32(2) (2013) (SORB "may actively disseminate" information pertaining to level three sex offender, "in such time, place, manner or means, as it, in its sole discretion, deems reasonable and proper").  Thus, Doe's information and photograph would be actively and publicly disseminated on SORB's Web site, while he remains confined; the bell cannot thereafter be unrung by reclassification, and dissemination, which can result in a wide variety of harms, see Moe v. Sex Offender Registry Bd., 467 Mass. 598, 604 (2014), cannot be revoked.  See Note, The Right to Be Forgotten, 64 Hastings L.J. 257, 259 (2012) ("information posted on the Internet is never truly forgotten").

Moreover, at a reclassification hearing, the regulations shift to Doe the burden of establishing that his risk of

reoffense and degree of dangerousness have been reduced, do not entitle him to appointed counsel if he is indigent, and provide that reclassification may not be requested for three years after the date of the final classification order. See 803 Code Mass. Regs. § 1.37C(2). In addition, most of the factors which SORB is to consider in determining whether a sex offender has demonstrated a reduced risk of reoffense contemplate that an offender already is living in the community. See id.

Accordingly, Doe's final classification as a level three sex offender must be vacated; the 2012 classification is only preliminary, and the evidentiary hearing held in February, 2012, must be left open. At a reasonable time prior to his actual release date, Doe may request a continuation of the evidentiary hearing, at which he may submit new evidence relevant to a final classification determination,[6] and SORB will bear the burden of establishing Doe's then-current risk of reoffense and degree of dangerousness. See G. L. c. 6, § 178L; 803 Code Mass. Regs. §§ 1.01, 1.10 (2013). If Doe does not seek a continuation of the hearing at a reasonable time prior to his actual release date,[7] the findings from the initial hearing will become final, and SORB

_____

[6] At that hearing, the Commonwealth also may introduce relevant new evidence.

[7] A next possible scheduled release date is to be distinguished from Doe's actual release date.

may issue a final classification determination based on the preliminary classification.

1. Background. a. Governing offenses. The hearing examiner found the following. At the time of the February, 2012, classification hearing, Doe was forty-six years old. He had been convicted of two separate sex offenses in 1987, and one sex offense in 2009. In 1987, when he was twenty-one, Doe was convicted of indecent assault and battery on a nineteen year old female acquaintance of his girl friend and sentenced to a one-year term of probation. Later that year, while on probation for the first sexual assault, Doe broke into his former girl friend's house, raped her three times, and then stabbed her, and himself, with a knife. He pleaded guilty to three counts of aggravated rape, assault with intent to commit murder, assault and battery by means of a dangerous weapon, and breaking and entering in the nighttime; he was sentenced to concurrent terms of incarceration of from ten to twelve years for all but one of these convictions, and a term of probation on the other conviction.[8]

In 2003, Doe met a twenty-two year old woman at a bus

---

[8] In 1990, Doe's motion to revise and revoke his sentences was allowed, and his sentences were modified to a single ten- to twelve-year term of incarceration, with commitment set to time served and the balance suspended for five years. In April, 1991, the suspension was revoked after Doe violated a term of his probation by having contact with his former girl friend (his second victim), and Doe was incarcerated until February, 1999.

station in Fall River; after he missed his bus to Boston, she invited him to spend the night at her apartment, where her brother was also visiting. The woman went to sleep alone in her bedroom and awoke to find that her pajamas had been removed and Doe was raping her. Doe fled the apartment after the woman's screams alerted her brother. The woman provided police a detailed description of her attacker, who was not identified at that time.

In May, 2006, Doe was sentenced to a term of two and one-half years of incarceration, with nineteen months to serve and the balance suspended, for failing to register as a sex offender. Shortly after he began serving this sentence, the State police crime laboratory conducted a search of a convicted offender database and matched a deoxyribonucleic acid (DNA) sample from Doe to a sample taken during the investigation of the 2003 assault. The victim then identified Doe from a photographic array.

In July, 2006, after receiving notice of the DNA match in the 2003 rape, the Commonwealth filed a petition pursuant to G. L. c. 123A, § 12, seeking Doe's civil commitment as an SDP. A jury found Doe to be sexually dangerous, and in January, 2007, he was committed to the treatment center. In October, 2009, Doe pleaded guilty to rape and was sentenced to a term of from five to eight years for the 2003 offense. The earliest date on which

he would become eligible for parole from that sentence was in December, 2012.  In June, 2010, Doe filed in the Superior Court a petition for discharge, pursuant to G. L. c. 123A, § 9.  In June, 2011, while that petition was pending, the CAB found during its annual review that Doe continued to be sexually dangerous.

b.  Classification proceedings.  Meanwhile, SORB had proceeded with a determination of Doe's sex offender classification level.  In September, 2009, SORB concluded that Doe presented a high level of risk of reoffense, and recommended that he be classified as a level three sex offender.  Doe challenged this recommendation and requested a de novo hearing to determine his final classification.  See G. L. c. 6, § 178L (1) (a).  The hearing ultimately was scheduled to be conducted in February, 2012.  At that time, trial in the Superior Court on Doe's petition for discharge had been scheduled for August, 2013, some eighteen months thereafter.  Doe requested that the hearing examiner either allow a continuance of the classification hearing until a date closer to the trial on Doe's petition, or that the classification proceeding be left open until immediately prior to his release, to allow for submission of then-current evidence of his risk of reoffense and his degree of dangerousness.  The hearing examiner denied this request.  The hearing took place as scheduled in February, 2012.  On March 16, 2012, the hearing examiner issued a decision concluding that Doe

should be finally classified as a level three sex offender, and ordering Doe to register as such.

2. Statutory and regulatory framework. The purpose of the sex offender registration statute is to protect "the vulnerable members of our communities from sexual offenders," St. 1999, c. 74, preamble, and from "the danger of recidivism posed by sex offenders."  St. 1999, c. 74, § 1.  Every person defined as a sex offender under G. L. c. 6, § 178C, is subject to a two-stage process of registration and classification.  See 803 Code Mass. Regs. § 1.38(3) (2013).  First, SORB prepares "a recommended registration determination and, if applicable, a classification of the sex offender as a Level 1, Level 2, or Level 3 Offender." 803 Code Mass. Regs. § 1.06(1) (2013).  Second, if the offender objects to SORB's recommendation, the offender may request a de novo evidentiary hearing before a SORB hearing examiner to determine whether he or she must register, and, if so, at what level of risk.  803 Code Mass. Regs. § 1.38(4) (2013).

In proceedings that result in a final classification of a sex offender's level of risk, the offender is entitled to an evidentiary hearing and an individualized assessment of the proper classification level, to be represented by legal counsel, and to judicial review of an adverse result.  See G. L. c. 6, § 178L; 803 Code Mass. Regs. §§ 1.01, 1.08, 1.10, 1.14, 1.26 (2013).  SORB bears the burden of establishing the sex offender's

current level of dangerousness to the community, and the risk of reoffense.  See G. L. c. 6, § 178L; 803 Code Mass. Regs. §§ 1.01, 1.10.

The sex offender registration statute requires that SORB develop guidelines to determine a sex offender's level of dangerousness and risk of reoffense, and that an offender's recent behavior and current treatment be considered as factors relevant to this determination.  See, e.g., G. L. c. 6, § 178K (1) (c), (h), (i), (j) (mandatory factors include "whether such sex offender is receiving counseling, therapy or treatment"; "the sex offender's participation in sex offender treatment and counseling while incarcerated or while on probation or parole and his response to such treatment or counseling"; "recent behavior, including behavior while incarcerated or while supervised on probation or parole"; and "recent threats against persons").

Consistent with this statutory imperative, SORB's regulations provide that a sex offender's current risk of reoffense and dangerousness to the community must be considered in arriving at a preliminary determination whether registration is required and in deciding a recommended classification level. See 803 Code Mass. Regs. § 1.06(2)(d) (2013) (requiring registration only if offender "currently poses a danger"); 803 Code Mass. Regs. § 1.06(3) (2013) (in determining whether offender "currently poses a danger," SORB shall review enumerated

criteria, as well as "other matters that demonstrate whether or not the offender poses a risk to reoffend"). Similarly, for a final classification determination, a sex offender's current circumstances must be considered. See, e.g., 803 Code Mass. Regs. § 1.40(10), (11), (12), (19), (20) (2013) (hearing examiner must consider, among other factors, whether offender is "currently" supervised; "currently in sex-offender-specific treatment"; offender's "current home situation"; and "recent behavior" while incarcerated or on probation or parole). SORB must demonstrate at the classification proceeding a "sound application of [the risk] factors to derive a true and accurate assessment of an offender's potential for reoffending." Doe, Sex Offender Registry Bd. No. 205614 v. Sex Offender Registry Bd., 466 Mass. 594, 605 (2013) (Doe No. 205614), quoting Doe, Sex Offender Registry Bd. No. 136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 656 (2012).

A sex offender "has sufficient liberty and privacy interests constitutionally protected by art. 12 [of the Massachusetts Declaration of Rights] that he is entitled to procedural due process before he may be required to register and before information may properly be publicly disclosed about him." Doe v. Attorney Gen., 426 Mass. 136, 143-144 (1997). As we said in Roe v. Attorney Gen., 434 Mass. 418, 427 (2001), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976):

"Where there is an interference with a protected liberty interest, the court must consider 'the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.'"

In the context of sex offender classification, we examine the fit "between a classification and the policy that the classification serves."  See Doe v. Police Comm'r of Boston, 460 Mass. 342, 349 (2011).

To further the statutory purpose of protecting the public, while at the same time protecting a sex offender's due process rights, the sex offender registration statute establishes time frames within which certain actions must occur in connection with classification proceedings when a sex offender is incarcerated or civilly committed, and imposes deadlines for final classification of such offenders.  See G. L. c. 6, § 178E (a) (SORB "shall classify such a sex offender at least [ten] days before the offender's earliest possible release date"); G. L. c. 6, § 178L (1) (a) ("Not less than [sixty] days prior to the release or parole of a sex offender from custody or incarceration, [SORB] shall notify the sex offender of his right to submit to [SORB] documentary evidence relative to his risk of reoffense and the degree of dangerousness posed to the public").  The registration statute contains no explicit requirement that SORB schedule a

classification hearing at a time near the anticipated date of a sex offender's release from custody.

Our jurisprudence has acknowledged that the purpose of the registration statute is "promoted by allowing final classifications of sex offenders while they are incarcerated," and "before their release back into the community."  Doe, Sex Offender Registry Bd. No. 1 v. Sex Offender Registry Bd., 79 Mass. App. Ct. 683, 688 (2011), citing Doe, Sex Offender Registry Bd. No. 1211 v. Sex Offender Registry Bd., 447 Mass. 750, 759-760 (2006).

At the same time, our decisions recognize that the registration statute requires SORB to base its classification determinations on a sex offender's "current" risk to the community, in order to protect the offender's right to due process.  See, e.g., Doe, Sex Offender Registry Bd. No. 8725 v. Sex Offender Registry Bd., 450 Mass. 780, 793 (2008) (sex offender entitled to hearing at which offender must have opportunity to demonstrate he or she is not "a current danger to vulnerable members of our communities"); Doe v. Attorney Gen., 430 Mass. 155, 168 (1999) (individualized hearing must be conducted to determine whether sex offender "is a present threat" because of likelihood of reoffense); Doe, Sex Offender Registry Bd. No. 6904 v. Sex Offender Registry Bd., 82 Mass. App. Ct. 67, 73-74 (2012) (Doe No. 6904), and cases cited ("Under the statute,

a sex offender is entitled to an individualized determination whether he is currently dangerous before registration and notification requirements may be imposed").  SORB's regulations themselves recognize that "the risk to reoffend and the degree of dangerousness posed by a sex offender may decrease over time." 803 Code Mass. Regs. § 1.37C(1).

3.  Application.  SORB contends that it is necessary to finally classify civilly committed sex offenders long before their actual release, to protect against the eventuality that the time prior to a trial on a petition for discharge by a sex offender might be shortened by a motion seeking an expedited trial, either by the CAB or by the petitioner, in two specific circumstances:  following the CAB's annual review, if it determines that a sex offender is no longer sexually dangerous, see G. L. c. 123A, §§ 6A, 9, or upon a finding by two qualified examiners who examined the offender in conjunction with a petition for discharge that the offender is no longer sexually dangerous.  See Johnstone, petitioner, 453 Mass. 544, 553 (2009). SORB maintains that any possible due process violation arising from a premature classification is ameliorated by the fact that its regulations permit a sex offender to seek reclassification after a three-year interval.  We are not persuaded.

a.  Final classification date.  To promote both the statutory goals that a sex offender's final classification be

made before discharge, and that it be accurate and current, a final classification must be based on an evaluation of the offender's risk of reoffense at a time reasonably close to the actual date of discharge. Reaching a final classification determination close to the actual date of discharge promotes accuracy of classification determinations, which advances both the interests of the community and of the sex offender. For instance, a sex offender who has spent insufficient time in the treatment center, which was established to provide "treatment and rehabilitation of persons adjudicated as being sexually dangerous," G. L. c. 123A, § 2, may not have had the opportunity to fully avail himself or herself of specialized treatment programs, or to make progress in treatment, so as to reduce the risk of reoffense according to SORB's guidelines. Similarly, a sex offender who has been committed to the treatment center for a lengthy period of time may have reached an age at which his or her risk of reoffense has been reduced. See Doe, Sex Offender Registry Bd. No. 151564 v. Sex Offender Registry Bd., 456 Mass. 612, 622-623 (2010). Moreover, advances in scientific research on sex offender recidivism over the course of an offender's commitment could indicate that additional factors should be considered, or that factors thought to be relevant to a determination of risk are not as predictive as initially believed. "Where, as here, scientific knowledge in a field is

rapidly evolving, . . . the applicable standards may require more frequent modification in order to reflect accurately the current state of knowledge" (citation omitted).  Id. at 623 n.6, citing Commonwealth v. Lanigan, 419 Mass. 15, 27 (1994).  See Doe No. 205614, 466 Mass. at 608-609 (potential for "frustration of individualized risk assessment is particularly conspicuous where the growing scientific consensus suggests specific factors that have quantifiable effects on recidivism rates, such as age and gender").

A premature, and potentially unreliable or inaccurate, classification as a level three sex offender has severe consequences where classification has become final and, as a result, an offender is required to register at that risk level. Information about level three sex offenders is entered into a publicly accessible Internet database, see G. L. c. 6, § 178D, and "SORB and local police departments 'actively disseminate' information about level three offenders to individuals and organizations who are likely to encounter those offenders.  G. L. c. 6, § 178K (2) (c)."  Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 104-105 (2014). Internet dissemination of sex offender information "exposes [offenders], through aggressive public notification of their crimes, to profound humiliation and community-wide ostracism." Smith v. Doe, 538 U.S. 84, 115 (2003) (Ginsburg, J., dissenting).

Sex offenders whose personal information is available on SORB's Web site "will suffer discrimination in employment and housing, and will otherwise suffer from the stigma of being identified as a sex offender, which sometimes means the additional risk of being harassed or assaulted."  Moe v. Sex Offender Registry Bd., 467 Mass. 598, 604 (2014).  "Classification and registration entail possible harm to a sex offender's earning capacity, damage to his reputation, and . . . 'the statutory branding of him as a public danger.'"  Poe v. Sex Offender Registry Bd., 456 Mass. 801, 813 (2010), quoting Doe v. Attorney Gen., 426 Mass. 136, 144 (1997).  An inaccurate classification at a higher risk level not only does not serve to protect the public, it places a more onerous burden on law enforcement officials.  See G. L. c. 6, § 178K (2) (c).

Acknowledging similar concerns, the Appeals Court set aside a final classification order based on a classification hearing held four years before a sex offender's release, and remanded the matter for a "new final classification evidentiary hearing."  See Doe No. 6904, 82 Mass. App. Ct. at 78.  The sex offender in that case argued that a classification hearing held four years before his release from incarceration was unreasonable under the registration statute, and was prejudicial to him.  Asserting that "a hearing closer in time to his release was required so that the board could appropriately determine whether he had availed

himself of sex offender treatment while incarcerated and whether he posed a current risk to the public," the sex offender had moved to reschedule the hearing.  Id. at 76.  His motion was denied, and SORB proceeded to make a classification determination eight months prior to the sex offender's next scheduled parole hearing, at which parole was denied.  Id. at 77.  The Appeals Court concluded that, "where no administrative justification was provided, a procedure imposing a final classification approximately four years old at the time of the offender's release from incarceration and affording a reclassification no earlier than five years after his release, is inconsistent with the statutory purpose."[9]  Id. at 78.

SORB argues that in the present case, unlike the incarcerated offender in Doe No. 6904, supra, Doe's commitment to the treatment center is open ended, and that this difference justifies conducting a classification hearing "as soon as practicable."  SORB contends that the due process protections extended to sex offenders during the classification process

---

[9] Under the reclassification procedure in effect at the time, see 803 Code Mass. Regs. § 1.37C(1) (2002), a sex offender was not entitled to an evidentiary hearing in conjunction with a motion for reclassification.  See Doe, Sex Offender Registry Bd. No. 6904 v. Sex Offender Registry Bd., 82 Mass. App. Ct. 67, 78 n.3 (2012).  In 2013, SORB amended its reclassification procedure, such that a sex offender now is entitled to an evidentiary hearing on a motion for reclassification.  See 803 Code Mass. Regs. § 1.37C(5) (2013).

require that certain events take place within time limits that make it "impracticable" to classify a civilly committed offender at a time closer to a trial on a petition for discharge.[10]

SORB notes also that, as discussed supra, the time prior to a trial on a petition for discharge might be shortened by a motion seeking an expedited trial, either by the CAB or by the petitioner, where a determination has been made, by the CAB or by two qualified examiners, that the sex offender is no longer sexually dangerous. SORB does not argue that either a favorable review by the CAB or a favorable determination by two qualified examiners entitles a sex offender adjudicated to have been an SDP to immediate release without an order by a Superior Court judge. Nor does SORB offer any explanation why, if classification hearings were left open, there would be insufficient time in which to evaluate additional, current evidence concerning the level of risk of a sex offender who sought and was granted an expedited trial on a petition for discharge.

SORB maintains that it was reasonable to seek final

---

[10] SORB cites, for example, regulations permitting a sex offender to submit, within thirty days after receipt of notice of a registration requirement, documentary evidence regarding the offender's risk to reoffend, 803 Code Mass. Regs. §§ 1.04(1), (4), 1.05(1) (2013); that the offender has twenty days after notification of SORB's recommended classification within which to request a hearing, 803 Code Mass. Regs. § 1.07(2) (2013); and that the offender must receive notice of the scheduled date, time, and place of the hearing thirty days in advance. 803 Code Mass. Regs. § 1.09(1) (2013).

classification of Doe ten months prior to his earliest parole eligibility date, because that was the earliest date on which Doe potentially could have been released. SORB contends that holding a hearing at that time "adequately balanced [SORB's] statutory requirement to finally classify a sex offender prior to his release from incarceration with the offender's right to have an individualized hearing to determine his current risk." SORB does not suggest that it was reasonably likely that Doe, who had been committed to the treatment center as an SDP, could in fact have been released into the community on the date on which he first became eligible for parole.[11] Rather, SORB maintains that Doe's

_____

[11] We note that, as with any other sex offender committed to the treatment center as an SDP, even if Doe had been released on parole or his sentence had expired, he could not have been discharged from the treatment center until a petition for discharge, pursuant to G. L. c. 123A, § 9, had been allowed. Notwithstanding its emphasis on Doe's parole eligibility date, SORB recognizes in its brief that Doe's parole eligibility date was his earliest possible release date only if he previously had been discharged from civil commitment as an SDP.

A prior version of G. L. c. 123A, § 9, stated that "[a]ny person committed to the center for treatment and rehabilitation under [G. L. c. 123A, §§ 5, 6,] shall be eligible for parole," and required that such individuals be presented to the parole board at least once in the first year of commitment and at least every three years thereafter. Commonwealth v. Travis, 372 Mass. 238, 244 & n.3 (1977), quoting G. L. c. 123A, § 9. See Thompson, petitioner, 394 Mass. 502, 503 n.1, 506-507 & n.5 (1985); St. 1985, c. 752, § 1. General Laws c. 123A, § 9, also allowed release on parole without a finding that an individual was no longer sexually dangerous. See Thompson, petitioner, supra at 504 n.3, quoting Commonwealth v. Travis, supra at 247 n.4. Those provisions were eliminated when the statute was rewritten in 1993, see St. 1993, c. 489, § 7, and release

procedural due process rights are protected adequately through the reclassification procedure, pursuant to which Doe may file a petition every three years seeking to obtain a lower classification level.

We conclude that SORB's final classification of Doe was premature. When SORB made its initial recommendation in September, 2009, that Doe be classified as a level three sex offender, he had been committed to the treatment center for approximately thirty-two months. Approximately one month later, Doe pleaded guilty to the 2003 rape. In his final classification determination, the hearing examiner noted that, although Doe had, during the preceding year, made progress in sex offender treatment, there were shortcomings in his response to treatment that remained to be addressed. When Doe eventually is discharged from the treatment center, this classification, based on his circumstances in early 2012, will not reflect an evaluation of his then-current risk of reoffense and degree of dangerousness to the public. See G. L. c. 6, § 178K (1) (h) and 803 Code Mass. Regs. § 1.40(17) (2013) (defining current sex offender specific treatment as risk-reducing).

Ensuring that a sex offender's final classification reflects a level of risk and dangerousness that is current at a time when

without an adjudication that a person is no longer an SDP is no longer possible under the statute. See G. L. c. 123A, § 6A.

the offender's release is imminent furthers both SORB's interest, and that of the public, in protecting vulnerable members of the community through reliable notification of an offender's risk of reoffense and degree of dangerousness, and better protects Doe's liberty interest in receiving a classification that reflects consideration of current, rather than stale, risk factors.  We turn to a consideration whether any harm from Doe's premature classification may be remedied through SORB's reclassification procedures.

b.  <u>Availability of reclassification</u>.  We do not agree that the reclassification procedure available under 803 Code Mass. Regs. § 1.37C(1), (2), ameliorates the potential harm to a sex offender's protected liberty interests.  As stated, the regulations provide that a sex offender must wait three years after the date of a final classification before requesting reclassification.  See 803 Code Mass. Regs. § 1.37C (2).  In addition, the factors SORB is to consider in determining whether reclassification is warranted, and the evidence that a sex offender must present to establish a reduced risk of reoffense, clearly contemplate that the offender must be living in the community.  See, e.g., 803 Code Mass. Regs. § 1.37C(2)(c) (stability of home and work situation, successful completion of probation, and substance free lifestyle in the community).  Therefore, a sex offender such as Doe, who is committed to the

treatment center, likely would be unable to make such a showing. Moreover, the reclassification procedure as defined in the regulations imposes on the offender the burden of establishing that his or her level of risk has been reduced, see 803 Code Mass. Regs. § 1.10(1), and neither an indigent nor a juvenile offender has the right to appointed counsel in connection with a reclassification hearing.  Compare 803 Code Mass. Regs. § 1.37C(5)(d) with 803 Code Mass. Regs. §§ 1.08, 1.14.

The registration statute, by contrast, requires SORB to bear the burden of proving that a classification reflects a sex offender's current risk to the community.  See Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 98 (1998).  If, in order to update the results of a final classification hearing that was prematurely conducted, Doe's only recourse were to seek reclassification, SORB effectively would be relieved of its burden.  Procedural due process is not satisfied where the burden to establish his or her level of risk is, in effect, shifted to the offender.  Nor is the statutory purpose advanced where a sex offender confined to the treatment center must meet this burden by producing evidence of a reduction in risk based largely on factors which, practically, require SORB to evaluate his or her lifestyle in the community.  See Roe v. Attorney Gen., 434 Mass. 418, 427 (2001), quoting Mathews v. Eldridge, 424 U.S. 319, 335 (1976).

c. <u>Remedy</u>. Because final classification of Doe will have been based on stale and not on current information on his risk of reoffense at the time he is actually released, and the reclassification proceeding does not adequately address procedural due process concerns, the final classification of Doe made in 2012 must be vacated, and Doe's classification as a level three sex offender must be deemed preliminary. Doe is entitled to a continuation of the evidentiary hearing, conducted in accordance with 803 Code Mass. Regs. §§ 1.07-1.26 (2013), at a time reasonably close to his actual release date; at that hearing, both Doe and SORB may introduce new evidence relevant to a final classification determination.

At any such hearing, in addition to the newly introduced evidence, the hearing examiner may consider all the evidence introduced in 2012, as well as the first hearing examiner's findings. If Doe does not introduce additional evidence, SORB may issue a final classification decision when Doe's release is imminent. If additional evidence is introduced at a continued evidentiary hearing that takes place at a time anticipated to be reasonably close to Doe's actual release date,[12] but parole or a

---

[12] The Appeals Court panel's decision in this case reasoned that a classification hearing held within ten months of a sex offender's potential discharge date adequately ensures that the offender's classification reflects an evaluation of his or her current risk at the time of discharge. See <u>Doe, Sex Offender Registry Bd. No. 7083</u> v. <u>Sex Offender Registry Bd.</u>, 86 Mass.

petition for discharge is denied, Doe may seek a further evidentiary hearing, at a reasonable time prior to a subsequent proceeding,[13] and both parties may introduce in evidence at that hearing further information relative to Doe's then-current risk of reoffense.  Cf. Doe No. 6904, 82 Mass. App. Ct. at 78 n.4 (suggesting offender may petition to reopen evidentiary hearing if significant period of time has elapsed between final classification and offender's scheduled release).

We note that other cases have raised similar concerns about the potential for classification determinations based on stale factors, see, e.g., Doe, Sex Offender Registry Bd. No. 3839 v. Sex Offender Registry Bd., 472 Mass.     (2015); Doe, Sex Offender Registry Bd. No. 3974 v. Sex Offender Registry Bd., 457 Mass. 53, 60-61 (2010); Doe No. 6904, supra at 75-76, and it appears likely that the issue will continue to arise in future cases.  SORB may wish to address these concerns through comprehensive amendment of its regulations in a manner that ensures its internal procedures meet constitutional due process requirements, with cognizance of the administrative burdens such

---

App. Ct. 1113 (2014) (unpublished).  While that reasoning may be correct, so long as the offender actually is discharged within ten months of the classification hearing, we need not decide the issue.

[13] The minimum one-year period between such proceedings, see G. L. c. 123A, § 9, would render invalid a determination based only on prior, stale evidence.

amendments may engender.  See Doe, Sex Offender Registry Bd. No. 972 v. Sex Offender Registry Bd., 428 Mass. 90, 100 (1998).

4. Conclusion.  Because the 2012 classification of Doe as a level three sex offender will not reflect an evaluation of his current level of risk at the time of his discharge from the treatment center, the decision finally classifying Doe as a level three offender is invalid, and the Superior Court judge's order affirming that determination is erroneous.  Both must be vacated.

The 2012 classification will remain preliminary until a reasonable time prior to Doe's actual release date.  At that time, Doe is entitled to reopen the evidentiary hearing, and to introduce new evidence relevant to his then-current level of risk.  SORB will then bear the burden of establishing Doe's then-current level of risk and dangerousness to the community.  See G. L. c. 6, § 178L; 803 Code Mass. Regs. § 1.01.  If Doe does not seek to reopen the hearing, the preliminary classification will become final.  The matter is remanded to the Superior Court for entry of a judgment consistent with this opinion.

So ordered.