NOTICE:  Summary decisions issued by the Appeals Court pursuant to M.A.C. Rule 23.0, as appearing in 97 Mass. App. Ct. 1017 (2020) (formerly known as rule 1:28, as amended by 73 Mass. App. Ct. 1001 [2009]), are primarily directed to the parties and, therefore, may not fully address the facts of the case or the panel's decisional rationale.  Moreover, such decisions are not circulated to the entire court and, therefore, represent only the views of the panel that decided the case. A summary decision pursuant to rule 23.0 or rule 1:28 issued after February 25, 2008, may be cited for its persuasive value but, because of the limitations noted above, not as binding precedent.  See Chace v. Curran, 71 Mass. App. Ct. 258, 260 n.4 (2008).

COMMONWEALTH OF MASSACHUSETTS

APPEALS COURT

24-P-286

JOHN DOE, SEX OFFENDER REGISTRY BOARD NO. 22014

vs.

SEX OFFENDER REGISTRY BOARD.

MEMORANDUM AND ORDER PURSUANT TO RULE 23.0

The plaintiff, John Doe, appeals from a Superior Court judgment upholding his classification by the Sex Offender Registry Board (SORB) as a level three sex offender.  Doe argues that the hearing examiner did not adequately explain how and why the facts of Doe's case justified a level three classification, under circumstances where the hearing examiner considered and applied multiple mitigating factors.  We affirm.

Background.  1.  Factual background.  We summarize the facts as found, and relied upon, by the hearing examiner, supplemented by undisputed facts from the record.

a.  Summer 1986 offenses (victim 1).  In June of 1986, Doe approached and hired a woman who was working in Lowell as a

prostitute (victim 1). Doe and victim 1 drove to a secluded area in Doe's van. Victim 1 asked for payment up front, but Doe refused, telling her that a different prostitute had stolen money from him. Doe then pulled a large knife from a tear in the seat of his van, and told victim 1 that he was not going to pay her. At some point, victim 1 tried to grab the knife from Doe, and Doe told her that if she did not let go, he would cut her fingers. Doe then raped victim 1 with his penis. Following the rape, Doe drove victim 1 back, and told her that he regretted that victim 1 had to pay for what someone else had done.

The hearing examiner also found, based on Lowell police reports, that Doe raped victim 1 a second time, around July of 1986. In that instance, Doe pulled up beside victim 1 in his van and offered her eighty dollars to spend time with him. Victim 1 did not recognize Doe, and got in his van. Doe took victim 1 to his house. Soon thereafter victim 1 saw the knife, and remembered who Doe was. Doe denied that it was him, but grabbed the knife, told victim 1 he would not pay, and repeated the same story about another prostitute robbing him. Doe again raped victim 1 with his penis. Following the rape, Doe drove victim 1 back to Lowell, and again told her that he regretted that she had to pay for the acts of others.

Thereafter, in September of 1986, victim 1 identified Doe when both were present in court on unrelated matters, and reported both rapes to the police.  In November of 1988, a jury found Doe guilty of rape, in violation of G. L. c. 265, § 22 (b), based on the first of the two rapes.  He was sentenced to a seven to twelve year State prison term, to be served from and after a separate five to twelve year State prison term for unarmed robbery (resulting from Doe's robbery of a bank).

b.  August 1986 offense (victim 2).  On August 22, 1986, Doe sexually assaulted and robbed another victim (victim 2).  That day, Doe agreed to hire victim 2 as a prostitute.  Victim 2 got in Doe's car, and they drove to another location.  Victim 2 then asked for the money, and Doe punched victim 2 in the face and grabbed her by the hair.  Victim 2 begged Doe not to hurt her; Doe grabbed victim 2's left breast and the back of her head, and refused to let go.  A struggle ensued and victim 2 got free, but Doe grabbed her purse.  Victim 2 reported the incident to the police; the officer noticed that victim 2 had a prominent bruise on the left side of her face and eye area.

In December of 1988, a jury convicted Doe of unarmed robbery, G. L. c. 265, § 19, and assault and battery, G. L. c. 265, § 13A.  Among other things, Doe was sentenced to a seven to twelve year State prison term for the unarmed robbery charge, to be served concurrently with his sentence for the rape of

3

victim 1. Although Doe was not convicted of a sexual assault, the hearing examiner found that Doe indecently assaulted victim 2, and intended to further sexually assault her.

c. June 2005 solicitation offense. In August of 2004, Doe was released from prison and placed on probation. In June of 2005, Lowell police saw a red Chevrolet vehicle loop around a street corner several times, passing by a known prostitute; Doe was later identified as the driver. Doe pulled into a parking lot, and the woman entered his car; the two left. Police later pulled Doe over. Doe claimed he and the woman were friends, but the woman stated that they had just met, and that Doe had offered her money for sex.

The charges resulting from this incident were dismissed. However, the hearing examiner found, based on the Lowell police reports, that Doe committed the crime of sexual conduct for a fee.

d. September 2008 solicitation offense. In September of 2008, police were conducting a sting in Lowell focusing on "Johns," as part of which an undercover female officer posed as a prostitute. Doe pulled up alongside the officer in a red Chevrolet and offered her twenty-five dollars for sex.

The charge resulting from this incident was dismissed. However, the hearing examiner found, based on the Lowell police reports, that Doe solicited the undercover officer for sex.

4

e.  August 2009 offense (victim 3).  In August of 2009, officers responded to a domestic disturbance and found Doe's wife of nine months (victim 3) standing in the street.  Victim 3 was crying, and was naked from the waist down, with blood between her legs near her thigh and vaginal area.  That evening, Doe had approached victim 3, while victim 3 was sitting on their couch, and told her that he wanted to have sex, but victim 3 told him that she was tired.  Doe thereafter got angry and tried to force victim 3's pants off.  Victim 3 retreated to the bathroom.

After victim 3 took her pants off to shower, Doe entered the bathroom and grabbed victim 3 by the throat, and yelled at her that he could do anything he wanted to her.  Doe then forced open her legs and attempted to shove a glass bottle into her vagina.  The bottle broke, and cut victim 3 multiple times on her inner thighs.  Victim 3 eventually freed herself, grabbed her cell phone, and ran down the street, calling the police.  Officers investigated and found broken glass and blood drops on the floor of the bathroom.

In September of 2011, Doe was convicted of assault with intent to rape, in violation of G. L. c. 265, § 24, and assault and battery by means of a dangerous weapon, in violation of G. L. c. 265, § 15A.  Doe was sentenced to thirteen to fifteen years on the assault with intent to rape charge, and five years

5

of probation on the assault and battery with a dangerous weapon charge.  Doe's third motion for new trial was still pending at the time of the hearing.  However, the hearing examiner found as fact that Doe had committed the sexual assault on victim 3, regardless of whether the conviction was ultimately vacated.

2.  Procedural history and classification decision.  In February of 2008, SORB classified Doe as a level two sex offender.  In July of 2010, Doe was reclassified as a level three sex offender.  That classification was placed in provisional status in 2021, however, as it occurred too early in consideration of Doe's anticipated release date.  See Doe, Sex Offender Registry Bd. No. 7083 v. Sex Offender Registry Bd., 472 Mass. 475, 484 (2015) ("[A] final classification must be based on an evaluation of the offender's risk of reoffense at a time reasonably close to the actual date of discharge").

In March of 2023, following a de novo hearing, the hearing examiner classified Doe as a level three sex offender.  Applying the factors in 803 Code Mass. Regs. § 1.33 (2016), the hearing examiner determined that Doe presented a high risk of reoffense and a high degree of dangerousness, and that a public safety interest was served by active dissemination of Doe's registry information.

As to risk-elevating factors, the hearing examiner considered that Doe sexually assaulted two strangers (factor 7,

6

increased weight) and subsequently, after being convicted of rape, sexually assaulted his wife (factor 2, increased weight). The hearing examiner also emphasized that Doe physically assaulted and threatened his victims (factor 8), and that he vaginally penetrated victim 1 with his penis on two separate occasions (factor 19, increased weight). Furthermore, the hearing examiner considered that upon Doe's initial release from incarceration, he returned to Lowell to seek out prostitutes (factor 23). The hearing examiner also relied upon Doe's criminal history, which included, in addition to the sexual offenses, violent nonsexual offenses, including convictions for unarmed robbery and assault and battery (factors 10 and 11).[1]

As to the risk-mitigating factors, the hearing examiner considered that Doe's brother and mother submitted letters of support; however, both family members only acknowledged Doe's offense against his wife, victim 3, and not his prior offenses, and neither mentioned a plan to help Doe refrain from offending (factor 33, minimal weight). The hearing examiner also

---

[1] The hearing examiner also applied factor 21, diverse victim type, and factor 22, number of victims. The hearing examiner further applied factor 16, public place, but gave it minimal weight because Doe made attempts to conceal his offending. The hearing examiner declined to apply factor 9, alcohol and substance abuse; factor 12, behavior while incarcerated; factor 13, noncompliance with community supervision; and factor 24, less than satisfactory participation in sex offender treatment.

7

considered, and found significant, that Doe would be on probation (factor 28, full weight) and that Doe was over fifty years old (factor 30, full weight). She also considered that Doe planned to reside with his mother after release, and that Doe had some employment potential (factor 34).[2] Ultimately, the hearing examiner concluded that, "[a]side from a minimal support system and residential stability with his 83-year-old mother, the only substantial mitigating factors are [Doe's] age of 57 and five years of probation supervision. However, I do not find these factors offset the otherwise significant risk elevating factors considered in this decision."

Doe sought judicial review of the hearing examiner's decision. Judgment entered for SORB; this appeal followed.

Discussion. Doe's primary argument on appeal is that the hearing examiner failed to adequately explain how she balanced the applicable risk-aggravating and risk-mitigating factors to arrive at a level three classification -- particularly where the hearing examiner applied several mitigating factors, including two at full weight -- factor 28, community supervision, and factor 30, advanced age. Doe argues that the hearing examiner's analysis instead reflects an impermissible "checklist" approach

_____

[2] The hearing examiner also considered two articles submitted by Doe, but, because the articles had been considered by SORB when it issued its classification regulations, deferred to SORB's interpretation of each article (factor 37).

8

of tallying the risk-elevating and risk-mitigating factors, without engaging with the particular facts of the case. We will reverse or modify SORB's classification decision "only if we determine that the decision is unsupported by substantial evidence or is arbitrary or capricious, an abuse of discretion, or not in accordance with law." Doe, Sex Offender Registry Bd. No. 10800 v. Sex Offender Registry Bd., 459 Mass. 603, 633 (2011).

The hearing examiner's decision was not, as Doe contends, a "perfunctory effort based on a tally sheet of aggravating and mitigating factors." Doe, Sex Offender Registry Bd. No. 11204 v. Sex Offender Registry Bd., 97 Mass. App. Ct. 564, 575-576 (2020) (Doe No. 11204). The hearing examiner applied one high risk factor (factor 2) and multiple risk-elevating factors indicating an increased risk of reoffense and an increased degree of dangerousness, several of which the hearing examiner applied with increased weight. Specifically, the hearing examiner considered that Doe committed very serious, contact offenses (including penile rape) against two strangers, and then after serving prison time for rape, sexually assaulted his wife (factor 2, increased weight; factor 7, increased weight; factor 19, increased weight; factor 21; and factor 22). The hearing examiner also considered that Doe physically assaulted or threatened all three of his victims (factor 8). The hearing

9

examiner further considered that after Doe's prior release in 2004, he returned to Lowell to seek out prostitutes; the hearing examiner noted that "upon his current release [Doe] could resume that behavior" (factor 23).[3]  Furthermore, Doe had a significant criminal history including other violent crimes (factor 10, factor 11).

The hearing examiner also considered and applied several mitigating factors, contrary to Doe's argument that the hearing examiner "disregard[ed] . . . the evidence in support of mitigation."  The hearing examiner considered two letters of support submitted by Doe's mother and Doe's brother, but noted that Doe's mother and brother only acknowledged Doe's offense against his wife, and not his prior offenses, and that they did not indicate a plan for helping Doe to refrain from reoffending (factor 33, minimal weight).  Accordingly, the hearing examiner gave minimal weight to these letters.[4]  The hearing examiner also

_____

[3] Doe argues that the hearing examiner placed excessive emphasis on factor 23, and Doe's conduct in returning to Lowell to pick up prostitutes.  However, it is within the hearing examiner's discretion to determine how much weight to ascribe to each factor.  See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014).  Here, where Doe began seeking out prostitutes in Lowell soon after his release, repeating the behavior that preceded his rapes and sexual assaults against victim 1 and victim 2, the hearing examiner did not abuse her discretion in finding this behavior to be "highly concerning and potentially predatory."

[4] Doe argues that the hearing examiner disregarded that Doe's mother and Doe's brother had offered Doe housing,

considered that Doe would live with his mother upon release, and that Doe had "some potential toward employment" (factor 34). Most significant to the hearing examiner were Doe's probation supervision and advanced age (factor 28, full weight; factor 30, full weight). However, the hearing examiner stated that she "d[id] not find [that] these factors offset the otherwise significant risk elevating factors considered in this decision." This was not an abuse of discretion under the circumstances. See Doe, Sex Offender Registry Bd. No. 68549 v. Sex Offender Registry Bd., 470 Mass. 102, 109-110 (2014) ("A hearing examiner has discretion . . . to consider . . . how much weight to ascribe to each factor . . . "); id. at 110, quoting G. L. c. 30A, § 14 (7) ("[A] reviewing court is required to 'give due weight to [the examiner's] experience, technical competence, and specialized knowledge'").

Doe also argues that his history of sexual offenses, the most recent of which occurred in 2009, is "dated," and that the hearing examiner did not adequately explain how Doe's past offenses are predictive of his current risk of reoffense and degree of dangerousness. However, Doe ignores that at the time

---

transportation, and employment. To the contrary, the hearing examiner considered this mitigating evidence in applying both factor 33 (with minimal weight) and factor 34.

11

of the hearing, he had been in custody since 2010.[5]  See Doe, Sex

Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd.,

482 Mass. 643, 651 (2019) (in assessing dangerousness, "[a]

hearing examiner . . . may consider an offender's older sexual

offenses . . . where the offender has not had recent opportunity

to commit sexual offenses because he . . . has been in

custody").  In sum, the hearing examiner's decision was "based

on a sound exercise of informed discretion rather than the

mechanical application of a checklist."  Doe No. 11204, 97 Mass.

App. Ct. at 574, quoting Doe, Sex Offender Registry Bd. No.

---

[5] Doe also argues that the hearing examiner "failed to address" that Doe's most recent offense was against his wife, and therefore was intrafamilial.  Doe argues that the intrafamilial nature of Doe's 2009 offense is important, because it places him at a lower risk of reoffense.  Cf. Doe, Sex Offender Registry Bd. No. 496501 v. Sex Offender Registry Bd., 482 Mass. 643, 651 (2019) (in evaluating dangerousness, "[w]here there is a history of different sexual offenses, the primary focus would likely be on the crime or crimes recently committed by the offender").  Doe points to no authority suggesting that an offender who offends against strangers, and later offends within his family, has a lower risk of reoffense.  To the contrary, SORB's regulations at the time stated that offenders "who have sexually offended against a stranger victim have a higher risk of reoffense," as opposed to offenders who "only" targeted intrafamilial victims.  See 803 Code Mass. Regs. § 1.33(7) (2016).

136652 v. Sex Offender Registry Bd., 81 Mass. App. Ct. 639, 651
(2012).

                                    Judgment affirmed.

                                    By the Court (Sacks,
                                      Englander & Walsh, JJ.[6]),

                                    _Paul Little_
                                    Clerk


Entered:  August 5, 2025.

---

[6] The panelists are listed in order of seniority.

13